## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Todd Andrew Wright | 2-20-bk-02742 EPB |
| Plaintiff | 22-AP-238 - EPB |
| -vs- | |
| NAVIENT SOLUTIONS, LLC., NELNET LOAN SERVICES INC. (DEN), and United States Department of Education | **FILED** |
| Defendant | OCT 1 9 2022 |
| | UNITED STATES BANKRUPTCY COURT THE DISTRICT OF ARIZON |

## AFFIDAVIT

I, Todd Andrew Wright, of Cave Creek, in Maricopa, Arizona, MAKE OATH AND SAY THAT:

1. 'Plaintiff' and/or "Debtor"), in the above-captioned proceeding move this Court to determine dischargeability of the debt owed to the United States Department of Education and Navient. In support hereof,

2. This Court has jurisdiction pursuant to 28 U.S.C. $1334.

3. This matter, is a core proceeding pursuant to 28 U.S.C. $8157(b)(1) and (2) which states: 2 ‖ "(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11... (2) Core proceedings include, but are not limited to (1) ‖ determination of the dischargability of particular debts.

4. Venue is proper pursuant to 18 U.S.C. $1408 and 28 U.S.C. $1409.

### MEMORANDUM OF POINTS AND AUTHORITIES
### FACTS & GENERAL ALLEGATIONS.

5. The US Department of Education, Navient and Nelnet does business in Arizona.

6. The Department of Education, Nelnet, and Navient is or was the holder and/or servicer of various promissory notes on which Plaintiff was the borrower.

7. The Department of Education, Nelnet and Navient holds and service a total of two (2) consolidation loans, which are the subject of this proceeding: (1) Borrower husband and ex-wife, type: FFELP Consolidation, loan date: 08/01/2003, Original principal: $29,670,  ⸱

   (2) Borrower husband and ex-wife, type: FFELP Consolidation, loan date: 08/01/2003, original principal: $4,988,

8. Loans for both the husband and the ex-wife were consolidated on 8/01/2003 with an original principal amount of $29,670 and $4,988.

9. As of 08/13/2022 Navient claims the principal balance to be $96,873.88 and estimates the total future interest to be repaid as $103,297.74 for a total repayment of $200,193.50. Monthly payments are sent at 35 payments of $666.01, 197 payments of $893.12, and a final payment of $935.51 to be paid on 01/28/2042.

10. Plaintiff obtained student loans for an education earning a Bachelor of Arts degree in History, Liberal Arts, and Secondary Education with a minor in Spanish from Utah State University between 1991 and 1995.

11. Plaintiff is not employed in any field in which degrees in History, Liberal Arts, or Secondary Education degree is of any value.

12. Plaintiff's ex-wife obtained student loans for education at Utah State University between 1991 and1996, earning a Bachelor of Arts degree in Early Childhood education.

13. Plaintiff and his ex-wife divorced on October 15, 2019.

14. Plaintiff work in public education from August 1995 to May of 1999 and again from October 2009 to July of 2022.

15. Starting in 1993, the U.S. Department of Education allowed married couples to combine their federal student loan debt into a single, joint consolidation loan. However, Congress didn't provide a way for couples to separate their loans if they divorced. As a result, both people remain tied together for years, even if they both remarry.

16. Consolidation loans, until the recent signing of the joint Consolidation Loan Separation Act on 10/11/2022, were not eligible for the Public Service Loan Forgiveness. Due to the fact that the plaintiff worked in Public Schools for a total of 17 years during the time of repayment these loans would have qualified for the forgiveness program after 120 payments of ten years. The Spousal consolidation loans were not eligible for this program.

17. In the divorce decree dated 10/15/2019, the wife was ordered to pay $150 per month for ten years for a total of $18,000 to the husband. No payments have been received, and all communication from the husband to an ex-wife in regard to this issue has been ignored.

18. The plaintiff's ex-wife remarried in July 2021.

19. Plaintiff went into Bankruptcy on 03/16/2020 due in large part to the plaintiff taking on all of the debt from the marriage.

20. Plaintiff was employed with CCUSD from July 2015 until April 1, 2022, as an assistant principal at Sonoran Trails Middle School.

21. Plaintiff was employed at ASU Digital Prep Middle School from April 2022 to July 22, 2022. On July 22, 2022 plaintiff was informed that he was involuntarily terminated from his employment. No reason was given.

22. According to the Federal Student Aid Website, "Generally, you'll have 10 to 25 years to repay your loan, depending on the repayment plan that you choose." The final disbursements for the plaintiff and the plaintiff's ex-wife were in May 1995 and May 1996 respectively. Accordingly, 27 and 26 years have passed since these loans were disbursed.

23. Due to the fact that this spousal consolidation loan was not eligible for the PSLF program to be totally forgiven after ten years of qualifying service the plaintiff is requesting that this debt be discharged in full as part of the chapter 7 bankruptcy.

24. Due to the fact that student loans backed by the US Department of Education are forgiven after 25 years of repayment, no mention was made to borrowers at the time of consolidation that the 25 year term of the loan would be reset. The plaintiff requests that the court fully discharge these loans as part of the Chapter 7 bankruptcy proceedings and this Adversary Complaint.

25. Both Plaintiff and the plaintiff's ex-wife were misled multiple times over the past 27 years to apply for forbearance of loans by Navient and its predecessors. This is the cause of the principal amount increasing from $34,658 to the current balance of $96,873.88. "Thursday, January 13, 2022 39 state Attorneys General announced today that Navient, known as one of the nation's largest student loan servicers, will provide relief totaling $1.85 billion to resolve allegations of widespread unfair and deceptive student loan servicing practices and abuses in originating predatory student loans."(2022). Navient Multi-State Settlement. Navient AG Multi-State Settlement. https://www.navientagsettlement.com/Home/portalid/0.

26. Plaintiff is currently unemployed. Plaintiff is in process of changing careers due to the difficulties experienced in public education during the international pandemic. Education is no longer an industry that is an environment that is conducive to good mental health for the plaintiff.

27. When the loans were consolidated O8/01/2003 Plaintiff was placed in the second position on the loan, or the plaintiff's ex-wife was in the first position. The loan shows under the ex-wife's name and social security number primarily. The loan doe not show on Plaintiff's account on the Federal Student Aid website. Plaintiff has no access to current loan information on Navient's website. His ex-wife refuses to respond to the plaintiff to assist in this matter.

28. Plaintiff has made a good-faith effort to repay the loans. Using repayment plans based on income, the payment amount has been $0 for several years and the loans are in good standing. Due to the moratorium on all student loan repayments throughout the pandemic, payments are set to restart on January 1, 2023.

29. Navient has been notified since March 2020 that the plaintiff is under the protection of chapter 13 and chapter 7 bankruptcy laws. However, Navient violated such protection by issuing an invoice with payments restarting on 09/28/2022.

30. On March 16, 2020 Plaintiff filed a voluntary petition for Chapter 13 Bankruptcy. The case number is 2:20-bk-02742-EPB.

31. There is no abuse or intent to abuse the bankruptcy by Plaintiff through the filing of his Chapter 7 petition or this action for a hardship discharge of Plaintiff's student loan liability.

32. The Bankruptcy Code provision governing discharge of student loan debt, 11 U.S.C. $523(a)(8) prohibits the discharge of student loan debt unless the denial of discharge would impose an undue hardship upon the Debtor.

33. Undue hardship is not defined by the Bankruptcy Code and courts have held that Congress intended the term to be interpreted on a case-by-case basis. In re Pena, 155 F. 3d 1108, || 1111 (9th Cir. 1998).

34. To satisfy the undue hardship test, the debtor must show: (1) that the debtor cannot 11 maintain, based upon current income and expenses, a "minimal" standard of living for himself and his dependents if he is forced to repay the loans; (2) additional circumstances exist indicating 10 that this state of affairs is likely to persist for a significant portion of the repayment period; and |(3) that the debtor has made a good faith effort to repay the loans. Brunner v. New York State 12 || Higher Education Services, Corp. 831 F.2d 395, 396 (2d Cir. 1987) (adopted by Ninth Circuit || in Pena, supra).

35. Additionally, the Ninth Circuit recognizes the Court's inherent power under 11 U.S.C. | $105(a) to grant a partial discharge of student loan debt, while exempting some of the debt from 16 || discharge. See, eg. In re Saxman, 325 F.3d 1168, 1175 (9th Cir. 2003).

36. Although the loans are currently being repaid through $0 payments using a payment plan based on income, and the COVID-19 Emergency Relief and Federal Student Aid the outstanding balance constantly increases due to compounding interest. The current payment plan is an exercise in futility and causes the hopelessness the bankruptcy statues are designed to prevent.

37. Plaintiff is temporarily living with a friend with minimal expenses by eliminating all non-essential expenses and living frugally. Plaintiff's only current income is $285 a week from the Arizona Department of Economic Security for unemployment insurance benefits.

38. Plaintiff did not reaffirm any debt in their bankruptcy.

39. Plaintiffs did not file bankruptcy solely to discharge student loan debts.

40. Income-based repayment plans have proven to be futile as absolutely no payment is in forecasts and therefore the principal continues to increase, adding to the debt,

creating hopelessness and increasing future hardship. See Roth v. ECMC, No. 11-1233 (9th Cir. BAP Apr. | 16, 2013). In Roth, the court observed that "[T]he law does not require a party to engage in futile 15 || acts" Id. at 920. In the Bankruptcy Appellate Court's view, "Congress could not have intended such a lengthy, empty commitment as a requirement for a determination of undue hardship." Id.

41. The end result of an income-based repayment plan in the case of Plaintiffs will be the entire loan forgiven at the end of the twenty or twenty-five-year period with interest added multiplying the debt which will result in "potentially disastrous tax consequences" and therefore causing a future undue hardship. See Roth v. ECMC, No. 11-1233 (9th Cir. BAP Apr. 16, 2013).

42. Plaintiff seeks access to the "fresh start" assured to all honest debtors afforded in the 22 Bankruptcy Reform Act of 1978. "Traditional bankruptcy policy has maintained that society benefits when honest and hopeless debtors are relieved of their debts and granted a fresh start." The Fresh Start Policy in Bankruptcy Law, 98 Harv. L. Rev. 3893, 1420 (1985).

43. If the Plaintiff were required to pay these debts, he would be unable to maintain a minimum standard of living either currently or in the future when the amount owed plus compounded interest becomes taxable income through a forgiveness program after twenty or | twenty-five years.

44. If Plaintiff were required to pay these debts he would be under repayment of loans for forty-seven (47) years. And he would pay over $165,000 in interest on loans with an original balance of $34,658 of which half is his sole responsibility.

45. In recent years, several bankruptcy court decisions in the Ninth Circuit have applied principles of compassion and practicality to student-loan bankruptcy cases in accordance with the equity principles expressed in Roth. See In re Nys, 446 F.3d 938 (9th Cir. 2006); In re Scott, || 417 B.R. (Bankr. W.D. Wash., 2009); Hedlund v. The Educ. Resources Inst., Inc. & Pa. HigherEduc. Assistance Agency, 718 F.3d 848 (9th Cir. 2013); & In re Roth, 490 B.R. 908 (9th Cir. BAP || 2013).

46. The factors, in this case, weigh in favor of an undue hardship discharge according to the Department of Education's own guidance issued July 7, 2015 under Policy Letter captioned as
DCL ID: GEN-15-13, Subject: Undue Hardship Discharge of Title IV Loans in

Bankruptcy 10 || Adversary Proceedings
(https://ifap.ed.gov/dpcletters/attachments/GEN1513.pdf). The Policy Letter requires
loan guarantors to determine if undue hardship exists and if so to consent to 12 ||
discharge instead of contest discharge. Further, the Policy Letter requires a look at the
bottom line of the specific case and consent when opposing the discharge will cost more
money than 14 || the realistic recovery amount. The realistic recovery amount in this case
is $0. While 34 CFR
682.402 gives the guaranty agency discretion to consent to discharge in cases where the
cost of defense is equal or greater than one-third of the amount owed, the Policy Letter
provides greater due diligence and removes the discretion. Therefore, if the parties
involved follow the Department of Education guidelines, they will consent to this
discharge.

47. Due to Plaintiff's low household income, the current and ongoing future lack of benefits of
    education, the good faith efforts by Plaintiff,  the undue hardship created by the spousal
    consolidation loans, the fact that these loans are no longer allowed, the unwillingness of
    the plaintiff's ex-wife to make court ordered payments or even allow plaintiff access to
    the loans via Navient's website, the recently passed legislation "Joint Consolidation Loan
    Separation Act"  and the uncertainty around this new legislation, the repayment of the
    student loans creates an undue hardship on the Plaintiff now and for the next 20 years. It
    is likely that all the circumstances that create the undue hardship for Plaintiff to make a
    payment towards the student loans will persist indefinitely.

48. WHEREFORE, Plaintiff requests that this Court enter an order discharging his student loan
    obligations to Defendant.